The first section of the act, on which the action is brought, authorizes the inhabitants to appoint a committee to regulate the fishery within the town of Orrington, and to dispose of the fish taken.
* The second section gives certain necessary powers to [ * 213 ] such committee.
The third section provides that, if any person or persons, other than said committee, or persons authorized by them, shall take am *220 of the said fish in the river, or in any part of any of the streams in the said town, at any time, or by any ways or means whatever, he shall forfeit and pay a sum not exceeding twenty-five dollars, nor less than ten dollars, for every such offence.
It was proved, at the trial, that the plaintiff was duly chosen and qualified to act in the office of treasurer of the said town of Orrington; that the committee, also duly chosen, had designated the times and places of taking fish, and given notice thereof; and that certain persons, employed by the defendant, having no authority from said committee, did, on the days set forth in the declaration, take fish for the use of the defendant, in a place called Brewer’s Cove, within said town of Orrington; that place having been appointed by the said committee as one of the fishing-places in the town.
Upon these facts, it is manifest that the penalty had accrued, unless the defendant could show a right to fish paramount to the act of the legislature. And such, in fact, was the defence set up by him, and which prevailed at the trial of the issue.
He proved that he was the lawful owner of the land contiguous to the waters where the fish were taken, deriving his title by a deed from Margaret Breiver of a part, and by a lease from John Brewer of the other part, of the land surrounding Brewer’s Cove. That part of the land which he holds under the deed from Margaret Brewer was devised to her. by her husband, Josiah Brewer, who held the same by deed from Simeon Fowler and John Brewer. The other part is claimed in fee simple by John Brewer, who holds the same under the deed of the committee for the sale of eastern lands, hereafter mentioned. The defendant claimed the sole and exclusive right of fishing in the cove bordering upon said land, as a privilege of, and [ * 214 ] appurtenant to, the land * which he holds as aforesaid.
And if it be true that, as owner of the upland, he is also owner of the flats contiguous, so as that he may exclude all persons from using the waters for fishing, certainly the act of the legislature could not interfere with his property, or restrain him in the use of it, except for public purposes, giving him an equivalent.
An inquiry, therefore, into the title of Brewer and Fowler, under the commonwealth, becomes necessary in the decision of this cause. The derivative conveyances from them to the defendant appear to be sufficient to convey all their title to him, so that a just construction of the rights acquired by them will be decisive of his claims.
It appears, by the report of the judge and the deeds in the case, that, on the 25th day of March, 1786, the committee for the sale of eastern lands, being authorized by a resolve of the legislature, by deed granted and conveyed to the said Brewer and Fowler ten thousand eight hundred and sixty-four acres of land, adjoining tc *221 Penobscot River, and on the east side thereof; excepting certain lots specified in said deed; and excepting also suitable and convenient landings and roads to the same from the lands purchased by Moses Knapp and associates; and the privilege of talcing fish, which are to be held in common between the said Brewer and Fowler and other settlers, and the said Knapp and his associates.
It would seem, by this deed, that Brewer and Fowler were the agents of the settlers, who were in possession of the land thereby granted; and provision is made in the deed, that one hundred acres of land should be assigned by Brewer and Fowler to each of those settlers, upon his paying to them his proportion of the sum secured by them to the treasury of the commonwealth, as the consideration of the purchase. There is also an appropriation of such surplus within the tract granted as should remain after the location and assignment of one hundred acres to each of the said settlers, which appropriation is not material in the present investigation.
* This being the "title of Brewer and Fowler, it might [ * 215 ] be sufficient to remark that it is inconsistent with the exclusive claim of the defendant. For the privilege of the fishery is expressly, by the deed, granted to all the settlers upon this tract in common, and in common also with Moses Knapp and his associates, to whom, as it will presently appear, the government had previously granted and conveyed the residue of the township, with an interest in the fishery. For, although it may generally be true, as asserted by the defendant, that the owner of land bordering upon coves, streams, &c., has the right of using the flats and waters contiguous to his upland, yet it is certainly true that the proprietor of the whole may limit his grantee of the upland to the use of the land only, and may appropriate the water privileges to others, or retain them himself. The defendant cannot avail himself of the right of fishing under the general term privilege, when, by the deed under which he claims to hold the right, it is distinctly otherwise appropriated.
But the title of the defendant is also subject to such stipulations as had been previously made by the government with Moses Knapp and his associates, in the deed of their committee to this company, which is also made part of the case. This deed was made on the 29th of June, 1785, and it conveys to the said Knapp and associates the tract of land which is now comprehended within the territorial limits of the town of Orrington, excepting the tract of ten thousand acres and upwards granted to Brewer and Fowler and their associates, as above stated. The habendum of this deed is in the following words, viz.: “ To have and to hold the same, with the *222 privilege of taking fish, in common with the said settlers, to the grantees, their heirs and assigns, forever.” Whether there is a mistake in the copy of the deed which I have, or there is an omission in the original, I do not know. But it is evident that the settlers here mentioned, with whom the grantees in this deed [*216 ] are to hold the privilege * of fishing in common, must be the settlers upon the river lots, with whom it is probable the committee for the sale of eastern lands were then in treaty for the confirmation of their several possessions»
Thus, then, it appears that the whole of the township was granted, by two several deeds, to two companies, with the right of fishing, within the limits of the grant, to the whole in common. Now, it was proved in the case, that two several tracts of land, comprehended in the two deeds, form the territory of the town of Orrington, and that the settlers mentioned in the said two deeds are now the inhabitants of the said town of Orrington. And, by reference to the statute of 1787, c. 43, incorporating the town of Orrington, it will appear that the description and boundaries of the said town are the same with those mentioned in the deed to Knapp and his associates. Upon this incorporation, the privilege of fishing within the limits of the town, in the great river, and the streams running through the same, became a corporate right or property, liable to be regulated, restrained, and limited, by the legislature.
This right of the legislature has been so long used, and so beneficially for the public and the inhabitants of the several towns, that it ought not now to be called in question. Indeed, without it great confusion would take place in the use of the privilege; and probably the privilege itself would soon cease by the destruction of the fish, which would be the consequence of an unrestrained right of fishing.
We cannot therefore perceive that the defendant has shown any legal title to an exclusive or several fishery, even in the waters flowing round the land of which he is the lawful proprietor; because the government, under which he holds, has granted no such title, but, on the contrary, has made a different disposition of this very privilege.
But it was attempted to establish this right by proving a long use and occupation of this privilege by the Brewers, as appurtenant to the land of which they were formerly possessed without title, but which is now holden by deed from the government.
*This point cannot be maintained; for they were mere intruders upon the government’s land, and so continued until they acquired their title by deed. The government does not lose its rights, because they have been usurped by individ *223 uals; nor, indeed, would this point avail the defendant against a private proprietor of the soil, because the annual temporary use of a fishing privilege could not amount to a disseisin.
But whatever rights might have been acquired by this possession, they were all extinguished and gone when the deed from the government was accepted. Brewer then admitted the right of the government, and his title ever afterwards must be considered as resting only on that deed. It has been already stated that the deed from the government gives no such right as is claimed by the defendant. We are therefore of opinion that his defence has altogether failed, and that the plaintiff has fully maintained his action against him. The verdict must therefore be set aside, and a new trial granted.