Parker C. J.
We consider it very clear that this action cannot be sustained by the plaintiffs as a committee of the inhabitants of Braintree. No authority is given by the statute to the committee therein provided to be chosen, to commence a suit for the penalty. A popular action is given to recover one half to the use of the person suing and the other half to the inhabitants of the town. The committee do not sue under that act, and they demand the whole of the penalty for the town. The inhabitants themselves, as a municipal body, could not *92 maintain an action, neither can their committee, professedly acting as such. Nor can they be considered as entitled to the suit as individuals, for it is not a joint action that is given by the statute. The authority given to the committee by the first section of the statute, to prosecute for any violations of the statute, is obviously limited to such violations as may relate to the regulations made by virtue of that section. The verdict must be set aside therefore, and the plaintiffs be nonsuited ; and this finishes our duty in regard to this case.
We have however been urged by the counsel for both parties to express an opinion on the general question, whether the proprietors of the mills would be liable in a suit properly brought, for the penalty for obstructing by their dams the passage of the fish into the ponds, which they are authorized by the statute of 1818, c. 35, to preserve as reservoirs for the use of their mills It is not generally expedient to discuss or decide questions beyond those which must necessarily be settled to dispose of the case. But there having been an elaborate argument, and there being a prospect of putting an end to controversies, we depart from our general rule, so far as to express our opinion upon the matters submitted by the argument.
The penalty sued for is prescribed by the statute of 1817, c. 151. The 2d section provides, that the owners or occupiers of dams across the river Monatiquot shall, during the time the fish are passing up, constantly keep open a passage through, over, or round their respective dams, sufficient for the passage of the fish, to the satisfaction of the selectmen of the town of Braintree,*under the penalty, &c.
It has been argued, that as the fishery in rivers not navigable belongs to the proprietors of the banks of the river, the legislature had no constitutional right to divest them, and vest the franchise in the inhabitants of the town through which the river passes ; and upon the principles of the English common law, the argument is well founded ; but the constant course of legislation upon this subject from the first settlement of the country, we think has qualified this right, so far as to subject it to the control of the legislature in the manner and to the extent it has been immemorially exercised. It is not necessary to go minutely into the subject^ that having been done repeatedly in *93 cases heretofore decided. It is enough to refer to them. Stoughton v. Baker, 4 Mass. R. 522; Burnham v. Webster, 5 Mass. R. 266 ; Nickerson v. Brackett, 10 Mass. R. 212; Commonwealth v. M'Curdy, 5 Mass. R. 324 ; Commonwealth v. Chapin, 5 Pick. 199. In the first case cjted, it was decided, that the colonial, provincial, and constitutional legislatures having exercised the right for the public good, of regulating the fisheries in the several towns, the owners of several fisheries and of dams across rivers, held their property subject to such regulations as the legislature should from time to time, for the preservation of the fish, prescribe. And that doctrine has been received and acted upon as law, from the time of that decision to the present.
It is urged, however, that this statute respecting the fishery in the town of Braintree, has been virtually repealed by the statute incorporating the defendant and others ; in which statute authority is ■ given to stop the waters in the ponds by means of dams across the river. But there is no express repeal, nor any strong implication of it, because the objects of the two statutes are not necessarily inconsistent. The legislature, without doubt, meant to give the same right in the dams to be erected, which proprietors of other dams had ; that is, to maintain them, sub • ject only to the inconvenience of keeping open a passage for fish during a small portion of the year. Without questioning the right of the legislature to discontinue the privilege of a passage-way for fish when the public interest shall require it, we see no ground to suppose that an authority to erect dams will per se repeal an antecedent provision for passage-ways through all dams upon the river.