## COMMONWEALTH *vs.* DAVID B. TIFFANY.

Worcester.    October 5, 1875. — January 4, 1876.    AMES, J., absent.

A complaint under the St. of 1869, c. 384, § 19, which charges the defendant with fishing in a certain pond, "in which fishes are lawfully artificially cultivated or maintained, without the permission of B., the proprietor of the pond," is sufficient without further designating the nature of B.'s interest.

Under the St. of 1869, c. 384, § 9, authorizing the commissioners of inland fisheries to lease, in the name of the Commonwealth, any great pond, exceeding twenty acres in area, for the purpose of cultivating useful fishes, the commissioners have authority to lease a pond which exceeds twenty acres in extent in its natural condition, although it has been increased beyond that extent by a dam.

The provision of the St. of 1869, c. 384, § 7, that the proprietors of any pond or parts of a pond, created by artificial flowage, shall have exclusive control of the fisheries therein existing, does not deprive the commissioners of their authority, under § 9 of the statute, to lease any pond exceeding twenty acres in area in its natural condition, although the pond has been increased in extent by artificial flowage.

ENDICOTT, J.    This is a complaint under the St. of 1869, c. 384, § 19, and it contains the charge that the defendant "in that portion of a certain pond, commonly known as Pratt's Pond, in which fishes are lawfully artificially cultivated and maintained, did unlawfully fish, without the permission of Daniel W. Batchelor, the proprietor of said pond."    The defendant moved before the magistrate and in the Superior Court before the jury were empanelled, to quash the complaint, because it did not allege that Batchelor was the proprietor of the pond, or that the pond had been leased to any person by the commissioners of inland fisheries, which motion was overruled and the defendant excepted.

It appears by the report that Pratt's Pond was leased to Batchelor, under § 9, by the commissioners of inland fisheries. The lease was in proper form and duly delivered; the lessee had entered under it and complied with its provisions, and the defendant had fished in the pond as charged in the complaint. It was in evidence that the pond was at the date of the lease about forty acres in extent; and that its waters were in part restrained by an artificial dam, and were used for operating a mill. The owner of the privilege had the right to maintain the dam and raise the water, as appeared by certain deeds which were put into the case.    Upon this evidence the defendant contended that the pond could not be leased by the commissioners.    But the

court ruled that if the jury found that the pond was more than twenty acres in extent before the erection of the dam, it could be leased by the commissioners. The defendant excepted to this ruling, and the jury found the defendant guilty.

Two questions are thus presented and have been argued by the defendant : first, whether the complaint should allege more specifically that Batchelor was the proprietor and the nature of his interest ; and, secondly, whether the pond in question could be leased by the commissioners under § 9.

1. It is contended by the defendant, that there are three classes of proprietors who are entitled to the control of the fishery in ponds under §§ 7 and 9 ; namely, the riparian proprietors of any pond not more than twenty acres in extent ; the proprietors of any pond or parts of a pond created by artificial flowage ; and the lessee of any great pond, exceeding twenty acres in extent, under a lease from the commissioners for the purpose of cultivating useful fishes therein. And the defendant further contends that if any one fishes in any pond held by either class of proprietors, he is subject to the penalty provided in § 19.

It is provided in § 18, " that fishes artificially propagated or maintained shall be the absolute property of the person propagating or maintaining them ; " and § 19 provides that " whoever fishes in that portion of a pond, . . . . in which fishes are lawfully artificially cultivated or maintained, without the permission of the proprietors," shall incur certain penalties.

It has been decided that a pond leased by the commissioners under § 9, for the cultivation of useful fishes, and thereby set apart and held for that purpose, is a place where " fishes are lawfully artificially cultivated and maintained " within the meaning of § 19 ; and that the lessee of such pond has the exclusive right of fishing in the whole pond. *Commonwealth* v. *Vincent*, 108 Mass. 441, 451. *Commonwealth* v. *Weatherhead*, 110 Mass. 175. The question has not been raised or decided, whether the penalties imposed in § 19 can be enforced against persons fishing without the permission of the riparian proprietors of ponds not more than twenty acres in extent, or of artificial ponds mentioned in § 7 ; or what proof, if any, is required on the part of such proprietors, that fishes are lawfully artificially cultivated therein. In the view taken by us, it is not now neces-

sary to decide that question; for assuming for the purposes of this case, as contended by the defendant, that every person is subject to the penalties named in § 19, who fishes in ponds not more than twenty acres in extent, or ponds created artificially, without having obtained the permission of the proprietors, who artificially cultivate or maintain fishes therein, we are of opinion that this complaint is not defective.

By referring to the words of the complaint, and to § 19, it appears that the complaint follows the language of the statute in describing the offence. It comes within the rule as stated by Mr. Justice Metcalf, in *Commonwealth* v. *Welsh*, 7 Gray, 324, that a charge in an indictment may be made in the words of a statute, without a particular statement of facts and circumstances, when, by using those words, the act in which an offence consists is fully, directly and expressly alleged, without any uncertainty or ambiguity. See *Commonwealth* v. *Barrett*, 108 Mass. 302. The offence here consists in fishing in a pond, called Pratt's Pond, in which fishes are lawfully artificially cultivated or maintained, without the permission of Batchelor, the proprietor of the pond.

It is immaterial and unimportant, so far as the defendant is concerned, or as bearing on the offence charged, how Batchelor obtained or held his title, or to which class of proprietors named in §§ 7 and 9 he belonged. That is a matter of evidence, involved in the proof which the government must offer to show that the pond was devoted to the artificial cultivation of fishes, and a particular statement of that fact need not be made in the complaint. Whether he was the riparian proprietor of a pond not more than twenty acres in extent, or the owner of an artificial pond, or a lessee under the commissioners, in either case, it was the same offence and subject to the same penalties. The lease was competent evidence to prove that the pond was set apart for the purpose named in the complaint, and that Batchelor was the proprietor, without whose permission the act complained of was done. Assuming therefore the construction contended for by the defendant to be the true construction, it is unnecessary to allege more particularly the proprietorship of Batchelor, or that he held the pond under a lease from the commissioners.

2. The remaining question to be considered is, whether the commissioners had authority to lease Pratt's Pond under the pro-

visions of § 9, or in other words, is Pratt's Pond a great pond within the meaning of that section. The verdict of the jury involved the decision, that before the erection of the dam it was more than twenty acres in extent, and the case finds that its area had been largely increased by the erection of the dam, and the consequent flowing back of the water. It is to be observed that the St. of 1869, *c.* 384, changes the law in regard to the size of great ponds, in which the public may have the right of fishing. By the ordinance of 1647, Anc. Chart. 148, 149, "no town shall appropriate to any particular person or persons any great pond containing more than ten acres of land." The uniform construction of this ordinance has been, that the right of fishing was public in all ponds exceeding ten acres of land, unless appropriated by the Legislature or the towns acting under the authority of the Legislature. *Commonwealth* v. *Vincent*, 108 Mass. 441, 451. *Coolidge* v. *Williams*, 4 Mass. 140. *West Roxbury* v. *Stoddard*, 7 Allen, 158, 166. The St. of 1869, *c.* 384, § 7, gives to the riparian proprietors of any pond, not more than twenty acres in extent, the exclusive control of the fisheries therein existing; and § 8 declares that any pond exceeding twenty acres in extent shall be public, except such as may have been granted by law, or leased as provided in § 9. As the law now stands the public have no right of fishing in any pond not more than twenty acres in extent.

But the term "great pond," as used in the Body of Liberties, Art. 16; 28 Mass. Hist. Soc. Coll. 219; in the colony ordinance of 1647; Anc. Chart. 148, 149; and in St. 1869, means a pond of a certain area created by the natural formation of the land at a particular place. The verdict establishes the fact that Pratt's Pond is a natural pond of this kind, and being in its natural state more than twenty acres in extent, it is within the description of a great pond in § 9. It was not created by the dam, but by the natural formation of the land; and the fact that it has been increased by the dam, does not change its character as a great pond of more than twenty acres in extent.

But the defendant contends that even if this construction is correct the commissioners have no authority to lease this pond, because it comes within the description of § 7, where it is provided that "the proprietors of any pond or parts of a pond,

created by artificial flowage, shall have exclusive control of the fisheries therein." This class of ponds the commissioners have no authority to lease, and the defendant contends, that, as parts of Pratt's Pond were created by artificial flowage, the proprietors who own that part of the land so flooded have control of the fisheries therein, and so upon a strict construction of the statute the commissioners could not lease the exclusive right to the fisheries in the whole pond.

But this is not the true construction of that clause of § 7. The words do not bear the interpretation " any pond or parts of a pond," which pond or parts are created by artificial flowage ; but " any pond or parts of a pond," which pond is created by artificial flowage. The word created refers to pond in each portion of the sentence. The provision has reference only to artificial ponds, artificially created, which may be owned in whole or in part by certain proprietors. What may be the extent of the rights of any proprietor of a part of such artificial pond, it is not necessary here to consider.

This gives a plain practical construction to the statute ; and it was the evident intention of the Legislature in enacting it, that the riparian proprietors of ponds not more than twenty acres in extent, and the proprietors of ponds created by artificial flowage, shall have exclusive control of the fisheries therein existing ; and that in great ponds which in their natural condition exceed twenty acres in extent, but which may have been increased by artificial flowage, the owners of land, covered by such increased or artificial flowage, have no control of the fisheries existing in such pond by reason of the provisions in § 7. Such ponds are public, as provided in § 8, unless specially granted by law or leased and, if leased, the lessee has the exclusive right to the fishery therein during the continuance of his lease.

*Exceptions overruled.*

*J. Hopkins*, for the defendant.

*C. R. Train*, Attorney General, for the Commonwealth.