## STATE v. WELCH.

North pond in the town of Stark, being a public water, is not " wholly within the control" of the littoral proprietors, and the public fishery in it is not affected by Gen. Laws, c. 179, s. 1.

INDICTMENT, under Gen. Laws, c. 179. s. 1, for catching and killing ten trout from North pond in Stark, May 1, 1884. A verdict was taken for the state, subject to exceptions. The pond is a natural body of water, about a mile and a third long, of irregular shape, averaging about one third of a mile in width. The defendant offered to show that its area is from 300 to 500 acres.

*Ladd & Fletcher* and *Aldrich & Remich*, for the defendant.

*J. H. Dudley*, county solicitor, and *O. Ray*, for the state. North pond lies wholly within the limits of lots 133, 143, 144, and lot

2, range 19, as drawn to the rights of the original proprietors. Lot 2, range 19, was formerly a part of Stratford. The other three lots have always been a part of Stark, formerly Percy. In the original survey of the townships, some of the boundary lines of those four contiguous lots passed through the pond. In 1775, when the townships were granted to the original proprietors of Stratford and Percy, the pond was not reserved for public use, but was conveyed as land included in the bounds of the granted premises. When the lots were divided among the proprietors, the bed of the pond was assigned as part of the four lots in which it was located. By the original grants of the townships the pond became private property, and it cannot be taken for public use without due process of law and compensation.

Doe, C. J. The statute is expressly made applicable " only to such ponds, streams, or springs as are wholly within the control of some person owning the land around the same, who has made some improvement or expended money or labor in stocking the same with fish for his own use." It is alleged in the indictment that North pond was " owned by and wholly within the control of the Percy Summer Club," and that the club owned the land around the pond, and had made improvements and expended money and labor in stocking the pond with trout for their own use. One of the reserved questions was raised by the objection (presented by the defendant at the trial) that the club had no such private right as was necessary to bring the case within the statute. Whatever view is taken of the evidence tending to show, as the state claimed, that the club owned the surrounding land, it had no tendency to show that they owned the pond. The bed of the pond was reserved, set apart, and held in trust for the public use. The club could not acquire the title by prescription, or by grant from the king or the executive branch of the provincial or state government. *Concord Mfg. Co.* v. *Robertson, ante, pp.* 1, 6, 7, 17, 19, 22, 26–28. If the original grants of the townships in which the pond was situated had been made by the provincial or state legislature, the title of the pond would have remained in the public trustee. *Ante, p.* 6. As the title is not claimed under a legislative grant, it is not necessary to inquire whether the legislature can convert the pond into private property by some other form of conveyance than a grant of a township. The pond, being public property, is not wholly within the control of any private persons, within the meaning of the statute, and the indictment cannot be maintained.

The evidence offered by the defendant to show that he went to the pond over an ancient public way, was immaterial. The object of the statute was to protect private rights in certain private ponds, and not to abolish a public fishery, or make it depend upon a pond's happening to be accessible from a highway. If the

.defendant could not go to North pond without committing a trespass by crossing private land (a point involving questions of law and fact on which no opinion is expressed), this circumstance did not change into a criminal offence his exercise of the public right of fishing on public land covered with water.

In *State* v. *Roberts*, 59 N. H. 256 (*S. C.*, 59 N. H. 484), the size of the pond did not appear; and in the decision of questions raised by the parties it is said (*p.* 258), "There is no suggestion that the public have any rights in its waters other than as a breeding-place for the supply of fish to other streams, or a channel for their passage." The state's title was not lost by a judgment for the state, asked and given on one of the grounds on which it could be legally rendered. In *Chase* v. *Baker*, 59 N. H. 347, the size of the pond is not stated, and there was no occasion to go beyond the ground on which it was held that the defendant was entitled to judgment.

*Verdict set aside.*

CARPENTER and BINGHAM, JJ., did not sit: the others concurred.