WATUPPA RESERVOIR COMPANY *vs.* CITY OF FALL RIVER.
TROY COTTON AND WOOLLEN MANUFACTORY *vs.* SAME.

Bristol. March 19, 1891. — September 2, 1891.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Ancient Grant — Great Ponds — Colony Ordinance — Possession
— Injunction.*

The Colony ordinance of 1647 was extended so as to become a part of the common law of Plymouth Colony, by usage and judicial decision, only from 1692, the date of the Province Charter.

By the Pocasset grant of March 5, 1680, from the Plymouth Colony to certain individuals for a substantial sum of money, the waters within the territory described in the conveyance, including great ponds so far as they lay within it, and the water rights connected therewith, passed to the grantees as private property before the colonial ordinance of 1647, devoting great ponds not then appropriated to private persons to the public use, went into effect in that Colony.

Where the whole of one great pond, and part of another great pond connected with it, were conveyed to certain individuals as private property by the Plymouth Colony prior to 1692, neither the Colony as owner of the remaining part of the second pond, apart from the exercise of sovereign powers, nor its grantee thereof, could draw off the water to the detriment of the first grantees.

*It seems* that the Watuppa Reservoir Company, a corporation made up of the representatives of the several mills on the Fall River, which has built and maintains a dam at the outlet of the Watuppa ponds, and controls the whole water power in the interest of such owners and for their benefit, has a sufficient possession to entitle it to an injunction to prevent a diversion of the water from such ponds.

TWO BILLS IN EQUITY, filed in the Superior Court, to prevent the taking of water from a great pond by the defendant city, as authorized by the St. of 1886, c. 353. After the former decision, reported in 147 Mass. 548, certain additional facts were incorporated in the agreed statement filed in both cases, and the cases were again heard together before *Mason*, C. J., who ordered the bills to be dismissed; and the plaintiffs appealed to this court. The facts appear in the opinion.

The cases were argued together at the bar, in March, 1891, and afterwards, in September following, were submitted on the briefs to all the judges except *Morton* and *Barker*, JJ.

*E. R. Hoar & A. J. Jennings*, for the plaintiffs.
*J. F. Jackson & E. Higginson*, for the defendant.

HOLMES, J.   These are the same cases which were reported in 147 Mass. 548.   Since that decision other facts have been added to the agreed statement, and the cases have been reargued, with reference not only to the facts now first appearing, but also to the old ones, and we have been asked to reconsider our former judgment.   We intend, however, to express no opinion upon the questions passed on then, because, apart from the questions upon which our opinions were divided, we are agreed that the plaintiffs now make a case calling for the interposition of this court.

The plaintiffs are successors in title to grantees of Plymouth Colony, to whom the land under and on both sides of the outlet of the pond, the Fall River, to a point below the plaintiffs' dam, was conveyed as part of a large tract.   This conveyance was made on March 5, 1680, to Church, Gray, and others, for the consideration of £1,100, and is known as the Pocasset grant or purchase.   The territory described in the granting clause of the deed included the whole of the South Watuppa Pond, and a large part, but less than half, of the North Watuppa Pond.   The habendum is, " all the above mentioned and bounded lands, with all and singular the woods, waters, coves, creeks, ponds, brooks, benefits, profits, privileges, and hereditaments whatsoever in before arising, accruing, belonging, or thereto anyways appertaining, or to any part or parcel thereof."   The plaintiffs also own other land on the Fall River as successors in title to other grantees of Plymouth Colony, to whom another large tract was conveyed in 1656, including all of the North Watuppa Pond not embraced in the Pocasset grant.   This is known as the Freemen's purchase.

The new questions concern the effect of these deeds, and more especially of the Pocasset grant.   Leaving the ordinance of 1647 on one side for the moment, we are of opinion that that grant purported to convey the ponds and water power embraced within its boundaries to the grantees as private owners.   It is argued that, great ponds not being mentioned in the granting clause, they must be taken to be excepted, and that the habendum cannot increase the gift.   But no such technical argument can be allowed to prevail against the plain meaning of one of our early deeds, if it ever would have prevailed in a case like this any-

where.   In the conveyances made early after the settlement of the country, artificial rules yield to the intention to be gathered from the four corners of the instrument, *propter inopiam consilii.   Ipswich Grammar School* v. *Andrews*, 8 Met. 584, 592. *Berry* v. *Raddin*, 11 Allen, 577, 581.   It is argued also, that the title of the grantees is to be dealt with on the same footing as the title of a town, and therefore as subject to the ordinance of 1647 when that became the law.   If so, then if the land at the outlet of the pond was held undivided by the original proprietors until after the Province Charter (1692), it might follow that the former decision in this case was still applicable.   The town of Tiverton was incorporated in 1694, with boundaries, it is said, nearly coincident with those of the Pocasset grant.   Moreover, we presume that there is no doubt that, " in the early settlements in the country, proprietors, commoners, and towns were often confounded."   2 Dane Abr. 698.   If we had before us a case where, after a grant of land and a great pond to proprietors, the same grantees or their successors were incorporated as a town, and thereafter the town had assumed to act as the proprietor of the land and pond, and in that state of things the ordinance of 1647 came into operation, we might hesitate to say that the pond was not within the scope of the ordinance.   *West Roxbury* v. *Stoddard*, 7 Allen, 158, 171.   But the elements of the case supposed, or of any equivalent to it, are wanting.   The original conveyance, the Pocasset grant, is not a grant to or the incorporation of a town.   It is a sale of land as private property to private individuals, for a substantial sum of money.   As we have said, this sale embraced the water right now claimed.   So far as appears, or as we have any reason to suspect, the whole land and water rights conveyed have been dealt with as private property from that day to this.   There is no ground for saying that when the ordinance of 1647 became law in the Plymouth Colony, or at any later moment, it found the Watuppa ponds the property of the Colony or of a town, or in a like position for the purposes of the ordinance.   We may add that the town of Tiverton was not in existence until two years after the date of the Province Charter, which it seems is to be taken as the date when the ordinance of 1647 was extended to Plymouth.   *Litchfield* v. *Scituate*, 136 Mass. 39, 46, 47.

There is no doubt, of course, that if the pond and the rights claimed by the plaintiffs had been appropriated to private persons before the ordinance went into effect, those rights remained unaffected afterwards. *Berry* v. *Raddin,* 11 Allen, 577. Again, we do not understand it to be disputed that, if the original Pocasset grantees got a private right to the water power now used by the plaintiffs, and did not lose it at the date of the Province Charter, the plaintiffs now have it. It seems to be plain that whatever mill or water rights the Pocasset grantees had at the mouth of the pond they conveyed to the plaintiff's predecessors in title. Finally, if the whole of the Watuppa ponds was the subject of private ownership, or if the Colony retained a part of one, subject to its conveyance of the rest to the Pocasset grantees, the other owner, whether the grantees of the Freemen's purchase or the Colony in its capacity of owner and apart from the exercise of sovereign powers, could not draw off the water to the detriment of the Pocasset grantees. See *Tudor* v. *Cambridge Water Works,* 1 Allen, 164; *Smith* v. *Moodus Water Power Co.* 33 Conn. 460.

The only question which remains is whether the ordinance of 1647 modifies the conclusion to which we have come apart from it. This may be answered in a few words. In *Litchfield* v. *Scituate,* 136 Mass. 39, 46, it is said that there is no sufficient evidence that the ordinance was the law of Plymouth Colony before its union with Massachusetts under the Province Charter, and on the next page the time when the Province Charter passed the seals is indicated as the moment when we are to take it that the ordinance became applicable to that part of the State. It is true that, when it did become applicable, it became so as part of the common law, and that the fiction generally applied in respect to the common law is, that it is only declared by the courts, and has existed immemorially. But when the ordinance of 1647 is said to be part of the common law of Plymouth Colony, all that is meant is, that, as was said in *Litchfield* v. *Scituate,* it has been extended to that territory by usage and by judicial decision. Such an extension does not necessitate a fiction that the law has been so always, which would be as unreasonable as a change of private rights in the guise of a declaratory statute.

It is fiction enough if we assume that the common law of Plymouth Colony conformed to the ordinance from the date of the Province Charter, a date too late to affect the plaintiffs in this case. An illustration may be suggested from our common law as to prescription. This has conformed to the statute of limitations as it has been altered from time to time. *Coolidge* v. *Learned*, 8 Pick. 504. *Melvin* v. *Whiting*, 10 Pick. 295, 297. *Edson* v. *Munsell*, 10 Allen, 557, 564. But we do not suppose that it would be argued that, when the statute was changed, the common law was changed for past time, retrospectively, so that, for instance, the use of a way for twenty years while the St. of 1736, c. 18, was in force should now be held to have gained a right, although at the time it was insufficient to do so.

There is no question made as to the remedy, if the plaintiffs' rights are established. *Tudor* v. *Cambridge Water Works*, 1 Allen, 164. We regard what we have said as sufficient to establish the rights of the Troy Cotton and Woollen Manufactory. It owns the land at the outlet of the pond. This being so, probably it is not regarded as material whether an injunction shall be issued in the case of the Watuppa Company also. That is a corporation made up of the representatives of the several mills owning water power on the Fall River, but seems not itself to be an owner of land or water rights. We gather, however, from the facts admitted, that it has built and is in possession of a dam at the outlet of the pond, and controls the whole water power in the interest of the owners, for their benefit. We are disposed to think that it shows a sufficient possession under the title of the owners to warrant the issuing of an injunction in its behalf.

*Decree for the plaintiffs.*