# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

PERCY SUMMER CLUB v. ASTLE et al.

(Circuit Court of Appeals, First Circuit. May 20, 1908.)

No. 682.

1. COURTS — JURISDICTION OF FEDERAL COURTS — CITIZENSHIP FRAUDULENTLY ACQUIRED.

A club was incorporated under the laws of New Hampshire for the purpose of acquiring and holding lands surrounding a lake in that state and the exclusive right of fishing therein. Subsequently some of the members incorporated a second club by the same name under the laws of New Jersey, to which the lands acquired by the first corporation were conveyed, and which also acquired other lands. Five years afterward a third club having the same name was incorporated in New Hampshire, to which all of such lands were leased. Five years later still the New Jersey corporation brought suit in a federal court in New Hampshire to establish its exclusive right of fishing in the lake. *Held* that, taking into consideration the facts that the members of the several corporations for the most part resided in New York, or further south, the length of time since complainant's incorporation, and that it had acquired additional land thereafter, it was not so clear that the sole purpose of its incorporation was to enable it to invoke the jurisdiction of the federal court as to defeat such jurisdiction.

2. FISH — PRIVATE RIGHTS OF FISHERY — INJUNCTION.

A complainant claiming the exclusive right of fishing in a body of water may maintain a suit in equity, in the nature of a bill of peace, to protect such right by enjoining other persons from fishing therein, who claim the right as members of the general public, and from committing trespasses on complainant's shore property which are only incidental to such fishing.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Fish, §§ 3, 8, 11.]

3. SAME — RIGHT OF FISHERY — PONDS AND LAKES IN NEW HAMPSHIRE.

Under the decisions of the Supreme Court of New Hampshire, taken together from the beginning, and based in part upon the Massachusetts ordinances of 1641 and 1647, and in part upon an appreciation of local usage from the earliest times, the right of fishing in all lakes and great ponds is free in the public, and, at least in the absence of a legislative grant, does not vest exclusively in the owner of the shore and soil; and the rule established by such decisions will be followed by a federal court in determining rights under a deed to property in that state.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Fish, §§ 3, 8, 11.]

163 F.—1

4. COURTS—FEDERAL COURTS—FOLLOWING STATE DECISIONS.

Where a decision of the highest court of a state, although based upon the common law, is deemed of an application especially local, its authority in a federal court is almost as great as would be given to it if it construed a state statute, especially if the rule thereby established pertains to real property.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 950–958.

State Laws as rules of decisions in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

Appeal from the Circuit Court of the United States for the District of New Hampshire.

Philip Carpenter, for appellant.

Edwin G. Eastman, Atty. Gen., for the State of New Hampshire.

Henry F. Hollis (Albert S. Batchellor, on the brief, and Crawford D. Hening, on supplemental brief), for appellees.

Before COLT and LOWELL, Circuit Judges, and BROWN, District Judge.

LOWELL, Circuit Judge. The complainant, a New Jersey corporation, brought in 1900 a bill in equity in the Circuit Court for the District of New Hampshire against defendant citizens of New Hampshire, named and unnamed, to enjoin them from fishing in Christine Lake and from trespassing upon its shores. The complainant claims an exclusive right of fishery in the lake and an exclusive right of access to its shores. The defendants assert a right to fish existing by the common law of New Hampshire in favor of the public. The Circuit Court dismissed the bill, and the complainant has appealed to this court. 145 Fed. 53. In their answer, the defendants set up that this court was without jurisdiction, because the complainant's citizenship in New Jersey was collusively acquired for the purpose of giving jurisdiction to the federal courts; that the complainant was really a New Hampshire corporation, and so the diversity of citizenship alleged in the bill was based upon fraud. This question was little argued before us or before the Circuit Court. Considerable evidence was taken thereupon. In their supplementary brief the defendants seem disposed to waive their objection. Nevertheless we are bound to dispose of the jurisdictional question before we consider the merits of the case. If this objection of the defendants be well founded, the Circuit Court was altogether without jurisdiction of the cause, although both parties had agreed to submit thereto. In 1883 certain persons organized a corporation under the laws of New Hampshire, styled the "Percy Summer Club," to which corporation most of the land in question was duly conveyed. In 1890 the members of the New Hampshire corporation, or some of them, organized the present complainant under the laws of New Jersey, and in the same year caused to be made to the complainant a conveyance of all the real estate belonging to the original New Hampshire corporation. Other land was subsequently acquired by the complainant from other persons. In 1895, when a compromise was proposed concerning the fishery in Christine Lake,

some members of the New Jersey corporation, and other persons acting with them, organized a second New Hampshire corporation under the same name. This second New Hampshire corporation took by lease from the complainant the latter's real estate, but that lease was terminated in 1899. The corporate purposes of the three several corporations above-mentioned were the same. The defendants contend that the court will look beneath the citizenship of the complainant in New Jersey, as established by the legal fiction which follows incorporation, and will treat the complainant, not as the veritable owner of the property here in question, but as a person who has been given a legal title thereto with the sole purpose that the real party in interest, a citizen of New Hampshire, may obtain a trial of its controversy with the defendants, also citizens of New Hampshire, in the federal courts.

The defendants rest their contention upon Lehigh Mining & Mfg. Co. v. Kelly, 160 U. S. 327, 16 Sup. Ct. 307, 40 L. Ed. 444, which undoubtedly resembles the case at bar in some important respects. The differences between the two cases are considerable, however, and, in our judgment, they are material. The Lehigh Company was incorporated immediately before the commencement of the suit. The complainant before us was incorporated 10 years before this bill was brought. In the Lehigh Case, as stated by Mr. Justice Harlan, no purpose but that of gaining federal jurisdiction was suggested by the plaintiff's incorporation. In the case at bar most of the complainant's members were residents of New York or of places further south. Some of these men testified that the New Jersey incorporation was resorted to for the greater convenience of corporate meetings. In the Lehigh Case the Virginia corporation was held ready to accept a reconveyance from the plaintiff after the close of the litigation. In the case at bar the New Hampshire corporation of 1883 has been neglected for many years, and the rights under its charter may well have lapsed. , Except as evidence of the intention of the members, the New Hampshire incorporation of 1895 does not concern us, being subsequent to that in New Jersey. In the Lehigh Case the plaintiff held no property except that conveyed to it by the Virginia corporation. In the case at bar the complainant has acquired land from parties other than the New Hampshire corporation. The complainant has spent considerable sums of money upon the property. On the whole, while we may suspect that a desire to enter the federal courts was the chief cause of the New Jersey incorporation, yet the defendants have not shown that this was the sole cause of that incorporation so clearly as to justify us in treating it as a mere subterfuge. The Circuit Court, therefore, had jurisdiction of the case.

At the argument the defendants contended that the bill should be dismissed because the complainant had an adequate remedy at law. We do not find this objection anywhere stated in the pleadings, and we agree with the learned judge of the court below that the case was not without the jurisdiction of the Circuit Court by reason of a want of equity. We also agree with him that the controversy before us was not res judicata between the parties.

We come next to the merits of the case. Christine Lake is a natural lake said to contain about 140 acres, situated in the town of Stark,

county of Coös and state of New Hampshire. There are several tiny streams flowing into it, and it delivers its waters through an unnavigable outlet-into the Ammonoosuc river. The complainant claims title to the whole border of the lake by mesne conveyances under grants from the English crown made in 1773 and 1774. The complainant's paper title does not go back beyond 1834; but the earlier land records of Coös county were destroyed by fire in 1886, and we may fairly infer the loss of a deed or of a series of deeds which granted to the complainant the title and rights conveyed by the crown to the grantees of Stratford and of Percy.

The Stratford grant made by the crown to the "grantees of Stratford" in 1773 was expressed to include "all that tract or Parcell of Land situate lying and being within our said Province of New Hampshire containing by admeasurement 48603 acres, and is to contain something more than —— miles square out of which an allowance is to be made for high Ways and unimprovable lands by Rocks Mountains and rivers 2600 acres free according to a plan and survey * *. * butted & bounded as follows, viz." (Then followed the boundaries expressed as in an ordinary deed.) "To have and to hold the said tract of land as above expressed together with all privileges and appurtenances to them and to their respective heirs and assigns forever by the name of Stratford, upon the following conditions." The conditions are immaterial. The Percy grant of 1774 used similar language. Construed according to the common law of England, these grants passed to the grantees the fishery in Christine Lake. Bristow v. Cormican, 3 App. Cas. 641.

The first Constitution of New Hampshire, adopted in 1784, provided that:

"All the laws which have heretofore been adopted, used and approved, in the province, colony, or state of New Hampshire, and usually practiced on in the courts of law, shall remain and be in full force until altered and repealed by the Legislature; such parts thereof only excepted as are repugnant to the rights and liberties contained in this Constitution."

In State v. Rollins, 8 N. H. 550, 561 (1837), the Supreme Court said: ⸜

"There seems to be no reason to doubt, therefore, that the body of the English common law, and the statutes in amendment of it, so far as they are applicable to the government instituted here, and to the condition of the people, were in force here, as a part of the law of the province, except where other provision was made by express statute, or by local usage."

The defendants assert a local usage of free fishery in the ponds of New Hampshire, contrary to the common law of England. The latest decisions of the highest court of New Hampshire undoubtedly declare that this usage exists. If it does not exist, the common law is operative, and the complainant prevails. The existence or nonexistence of this local usage is the principal question in the case.

The complainant's argument is this: The grants made by the crown to the "grantees of Stratford" in 1773, and to the "grantees of Percy" in 1774, though these grants made no express reference to fishery, yet passed to the grantees the title both to the waters of Christine Lake and to the fishery therein. This was the construction put

upon like grants by the common law which, in 1773 and 1774, was in force in England, which was then in force in the Province of New Hampshire, and has since been established as the common law of the state by virtue of its Constitution adopted in 1784. This was the construction put by the courts of New Hampshire upon like grants until 1889, when the Supreme Court of the state overruled its former decisions and thus changed a well-established rule of property. Under these circumstances, the federal courts are not bound by the latest decisions of the state courts in the construction of the grants under consideration, but, on the contrary, are bound to secure to the complainant grantee the rights conveyed by the grants as they were first construed. To establish its position the complainant refers to Gelpcke v. Dubuque, 1 Wall. 175, 17 L. Ed. 520, and Muhlker v. N. Y. & Harlem R. R., 197 U. S. 544, 25 Sup. Ct. 522, 49 L. Ed. 872. If this court does not deem the decisions rendered in New Hampshire before the grant to the complainant conclusive here in its favor, then the complainant makes the alternative contention that the federal courts should construe the language of the grants as to them seems right, uncontrolled by the decisions of the New Hampshire courts which have been rendered since the grants to the complainant were made. For this alternative contention, the complainant refers to Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359, and to Roberts v. Lewis, 153 U. S. 367, 14 Sup. Ct. 945, 38 L. Ed. 747. The defendants, on the other hand, rely upon the latest decisions of the New Hampshire courts.

As our decision of this case must depend largely (1) upon the course of decision in the Supreme Court of New Hampshire, and (2) upon the relation of the federal courts to this course of decision, we must examine carefully and at some length (1) the decisions of the Supreme Court of New Hampshire concerning lakes and the fishery therein, and (2) the decisions of the Supreme Court of the United States concerning the authority which should be attributed by the federal courts to the decisions of local courts upon the law of real estate, and upon the construction of deeds. Before dealing with the cases decided by the Supreme Court of New Hampshire, however, mention must be made of the Massachusetts ordinances of 1641 and 1647, which have affected considerably the fishery law of eastern New England, and have often been referred to by the New Hampshire court. Without some account of these ordinances, the opinions of that court could not be made intelligible.

In 1641 the Colony of Massachusetts Bay, which adjoined New Hampshire on the south made the following provision in its Body of Liberties:

"Every Inhabitant that is an howse holder shall have free fishing and fowling in any great ponds and bayes, coves and rivers, so farre as the sea ebbes and flowes within the presincts of the towne where they dwell, unlesse the free men of the same towne or the Generall Court have otherwise appropriated them, provided that this shall not be extended to give leave to any man to come upon others proprietie without there leave."

Colonial Laws of Mass. (Whitmore's Ed. of 1889) p. 37, No. 16. The Massachusetts Body of Liberties is reprinted in 1 Laws of New

Hampshire, p. 748, as, in the opinion of the learned editor, "made operative by colonial legislation in New Hampshire as well as in Massachusetts Bay." In 1647 the provision above quoted was amplified and amended by the General Court of Massachusetts Bay as follows:

"Every Inhabitant who is an householder shall have free fishing and fowling in any great ponds, bayes, coves and rivers, so farr as the sea ebbs and flowes, within the precincts of the towne where they dwell, unless the freemen of the same towne or the General Court have otherwise appropriated them. Provided that no town shall appropriate to any particular person or persons, any great pond containing more than ten acres of land, and that no man shall come upon anothers propriety without their leave otherwise then as hereafter expressed. The which clearly to determine, It is declared, that in all creeks, coves and other places, about and upon salt-water, where the sea ebbs and flowes, the proprietor of the land adjoining, shall have propriety to the low-water-mark, where the sea doth not ebb above a hundred rods, and not more wheresoever it ebbs further. Provided that such proprietor shall not by this liberty, have power tò stop or hinder the passage of boates or other vessels, in or through any sea, creeks or coves, to other mens houses or lands. And for great ponds lying in common, though within the bounds of some town, it shall be free for any man to fish and fowle there, and may pass and repass on foot through any mans propriety for that end, so they trespass not upon any mans corn or meddow." Ib. 170.

This òrdinance has been construed to leave fresh ponds of less than 10 acres in the ownership of the riparian owners. By St. 1869, p. 678, c. 384, §§ 7, 8, the limit of private ownership in Massachusetts has been raised to 20 acres.

In Storer v. Freeman, 6 Mass. 435, 437, 4 Am. Dec. 155, the Supreme Court of Massachusetts held that the ordinance of 1647 was "annulled with the charter by the authority of which it was made." The reference is to the forfeiture of the charter of the Colony of Massachusetts Bay in 1685. This supposed annulment of the ordinance has since been doubted by the same court. Commonwealth v. Alger, 7 Cush. (Mass.) 53; Commonwealth v. Roxbury, 9 Gray (Mass.) 451 (and the note thereon of the learned reporter, afterwards Chief Justice of the Supreme Court of Massachusetts and associate justice of the Supreme Court of the United States); Litchfield v. Scituate, 136 Mass. 39, 46; Attorney General v. Revere Copper Co., 152 Mass. 444, 25 N. E. 605, 9 L. R. A. 510; Watuppa Co. v. Fall River, 154 Mass. 305, 28 N. E. 257, 13 L. R. A. 255; Attorney General v. Herrick, 190 Mass. 307, 76 N. E. 1045; Boston v. Lecraw, 17 How. 426, 15 L. Ed. 118; Shively v. Bowlby, 152 U. S. 1, 19, 20, 14 Sup. Ct. 548, 38 L. Ed. 331. In Butler v. Attorney General, 195 Mass. 79, 82, 83, 80 N. E. 688, 689, 8 L. R. A. (N. S.) 1047, the court observed:

"The ordinance is treated as settling the common law of Massachusetts, and as embodying the local law as to the jus privatum, which in England is represented by the crown, and the jus publicum, which is there represented by the Parliament, both of which in this country are subject to the exercise of legislative power."

Whatever be the precise force of the ordinance as an existing statute, several matters are well settled in connection with it: First, it expresses the law of the land then contained in the Colony of Massachusetts Bay; second, it likewise expresses the law of the land then

contained within the Colonies of Plymouth and of Maine, and in the islands of Martha's Vineyard and Nantucket, which then belonged to New York. In no place outside the Bay Colony did it have the force of statute law. Barker v. Bates, 13 Pick. (Mass.) 255, 23 Am. Dec. 678; Emerson v. Taylor, 9 Greenl. (Me.) 42, 23 Am. Dec. 531; Barrows v. McDermott, 73 Me. 441. The fishery of great ponds was thus free in Massachusetts to the south of New Hampshire, and in Maine to the north and east. From 1640 to 1679, the whole or part of the territory contained in the present state of New Hampshire was subject to the jurisdiction of the colony of Massachusetts Bay under circumstances and with limitations which we need not here discuss. During this period the ordinances above referred to were adopted. In several cases the Supreme Court of New Hampshire has treated the Massachusetts ordinances as having a material, though somewhat anomalous effect upon the law of New Hampshire. These cases and others relating to the right of fishery in ponds we next consider.

In State v. Gilmanton, 9 N. H. 461 (1838), Id., 14 N. H. 467 (1843), the boundaries of a town were in question, described in the grant as "running * * * to Winipisiogee pond, or river that runs out of said pond * * * then north to Winipisiogee pond; then on the pond and river to meet the first line." 9 N. H. 462. As there was controversy whether the water in question was a river or something else, the court observed:

"The question whether the water be a river or not is important only upon the ground that, if it be a river, the town, as it extends to the river, is bounded by the center of the stream, whereas if it strikes any large body of standing water, by whatever name it is called, it is bounded by the water's edge." 14 N. H. 478.

See, also, 9 N. H. 463. The jury found the water in question to be a river, and the decision of the case, which deals with a political rather than a private boundary, is not in point.

In Nudd v. Hobbs, 17 N. H. 524, 526, 527 (1845), the court said that:

"By the union of the settlements in New Hampshire with the colony of Massachusetts, the laws of the Massachusetts colony were extended over those settlements, and justice was administered here according to the rules there prescribed. This union continued until 1679, and during that time the ordinances relating to lands bounding on the seashore would seem to have been in force here, as a part of the laws regulating the title to real property. If this be so, it may perhaps be held that the first enactment of the General Assembly of the province of New Hampshire, under the commission constituting a president and council for its government, which provided that the laws they had formerly been governed by should be a rule in judicial proceedings, so far as they would suit our Constitution, and not be repugnant to the laws of England, until others were legally published, included the ordinance of 1641, so that it has been transmitted as the rule in relation to this species of property to the present day."

In Nudd v. Lamprey, an unreported case, decided in 1847, referred to in Concord Mfg. Co. v. Robertson, 66 N. H. 1, 25 Atl. 718, 18 L. R. A. 679 (1889), the court held that the owner of the upland had not the exclusive right to take seaweed from the adjoining flats. In his opinion Chief Justice Parker said:

"The court instructed the jury that the seashore belonged to the owner of the adjoining land to low-water mark. If this ruling be correct, it must be because the English common law has been abrogated by the Massachusetts ordinance of 1641; but we cannot hold that that ordinance was adopted here either in practice or as law. The temporary union of this state with Massachusetts did not make that ordinance the abiding law of this state. There was no possession upon which plaintiff can maintain his action. We know of no legislation by which the ordinance of 1641 is in force here, and the counsel for plaintiff seem to admit that they do not understand how it is in force in Massachusetts and Maine."

Notwithstanding this language, the ordinances continued to be noticed by the Supreme Court of New Hampshire as having some effect upon the interpretation of New Hampshire law.

Bell v. Offutt (1860) was a writ of entry to recover so much of the bed of Massabesic Pond as was situated adjoining and over against the plaintiff's land. After argument before the full court, and after the preparation of an opinion by Mr. Justice Fowler, which was concurred in by the rest of the judges, the case was settled by an entry of "neither party." It follows that Mr. Justice Fowler's opinion has not the authority attaching to an opinion of the full bench rendered in a case which has been litigated to final judgment, and so it has not been reported. Nevertheless we feel justified in referring to it as an exposition of local law made by persons chosen to interpret the laws of New Hampshire, whose pronouncement was deprived of full authority only by an act of the parties, unconnected with the opinion formed by the judges. For the history of this case we refer to the original draft of Chief Justice Doe's opinion in the Concord Mfg. Co. Case, printed as an appendix to the complainant's brief in the case at bar.

Massabesic Pond is situated in Auburn, and contains about 1,200 acres. The precise form of the deed in controversy in Bell v. Offutt was discussed in the introduction to the opinion above referred to. The judges, however, expressly rested their conclusion upon a rule of law that conveyances of the land about a navigable pond in New Hampshire do not pass title to the bed of the pond. For example, Mr. Justice Foster said:

"The lakes and large ponds of fresh water in this country are clearly navigable waters, and the dominion and property in them and the lands under them are of public right and inseparable from the power of government unless by express or explicit grant for the purpose, if at all. * * * Thereupon the title to the land under the navigable waters of New Hampshire, whether tide waters, lakes, or ponds, revested in the crown to be holden in trust for the public as a prerogative of the government, unless specially dissevered therefrom by apt words clearly expressing an intention to separate the same from the government. Inland waters, where the public have been used to exercise a free right of passage and of fishery from the time whereof the memory of man runneth to the contrary, are public navigable waters. Public user is the most convincing evidence of the navigability of water—the most unfailing test to apply. * * * Tried by this test, there can be no doubt, we think, that Massabesic Pond and all the large bodies of fresh water in New Hampshire are navigable. By the Colony Ordinance of 1641 in Massachusetts Ancient Charters, 148, 149, all great ponds, defined to be ponds of over 10 acres in extent, were expressly declared to be public, and, though lying within any town, not liable to be appropriated to any particular person or persons. It is believed that this ordinance, if not formally, was practically at least adopted as of binding force in New Hampshire by the extension of the juris-

diction of Massachusetts over our territory; at all events, the history of legislation here from the earliest organization of the government shows that the fisheries in such ponds and the streams flowing from them were regarded as of public right. There is scarcely a lake or pond of any considerable magnitude within the limits of the state which has not at one time or other been the subject of special legislative control by the prohibition of the right therein at particular seasons, and the regulation of the mode of taking fish therefrom at other times. So, too, several acts have been passed annexing islands in our lakes and ponds to the neighboring towns. Now, upon the doctrine upon which plaintiff in the present case contends, all these legislative acts were clearly usurpations—unauthorized and unjustifiable attempts by the Legislature to interfere with and control the private and exclusive rights of the owners of these lakes and ponds to the fish and islands within their waters. But, in our view of the matter, these acts furnish the most conclusive evidence that these lakes and ponds were regarded, used, and treated by the Legislature, both provincial and state, as of public right—as possessing all the distinguishing characteristics of public navigable waters."

The reference to the Massachusetts ordinances of 1641 and 1647 is to be noted as indicating that the decision in Nudd v. Lamprey was not intended to exclude that ordinance from all effect upon New Hampshire titles.

While the conclusion in Bell v. Offutt was rested upon the navigability of Massabesic Lake, and that lake is several times as large as Christine Lake, yet no test of navigability in Bell v. Offutt was suggested which does not apply to the latter. Massabesic Lake is not comparable in size to Winipisiogee. The opinion recognizes also the difference between a boundary upon a nonnavigable fresh water stream and that upon a lake.

In Clement v. Burns, 43 N. H. 609, 621 (1862), a case concerned with the right of the owner of the upland to the adjoining flats, the court said:

"As a rule of positive law, the ordinance of 1641 was not binding upon New Hampshire; but when we consider that a union was effected in that same year between New Hampshire, or so much of it as was then settled, and Massachusetts, which was continued for about forty years, making them practically one government, we should naturally expect that the same usages would spring up here under that ordinance."

In this remark the court accepted the statement of the Supreme Court of Massachusetts in Storer v. Freeman that, by reason of the forfeiture of the Massachusetts charter, the ordinances of 1641 and 1647 had ceased to have any legislative force. In that respect the New Hampshire court did not distinguish between Massachusetts and New Hampshire.

In State v. Franklin Co., 49 N. H. 240, 6 Am. Rep. 513 (1870), the court had to consider the right of fishery in Lake Winipisiogee now admitted to be public. The decision of the case does not concern us, but, in order to establish the freedom of the fishery, Mr. Justice Smith referred to West Roxbury v. Stoddard, 7 Allen (Mass.) 158, a case which is wholly concerned with the rule of law embodied in the Massachusetts ordinances. Considered together, these New Hampshire cases which we have already referred to indicate, at the least, that in New Hampshire, as well as in Plymouth and in Maine, the Massachusetts ordinances concerning fresh water ponds express the present

law of the land, though the basis of this law in all these places may be doubtful.

In State v. Roberts, 59 N. H. 256, 47 Am. Rep. 199 (1879), the owner of the land surrounding Christine Lake was indicted for a violation of chapter 55, p. 44, Laws 1872, which reads as follows:

"No person shall catch, kill or destroy any trout [in certain months]. This act shall not be construed to apply to any waters in which any person or persons have now by law the exclusive right to take * * * trout."

The court held that, if there was free communication through which trout passed from the lake to the Ammonoosuc river, the state might limit the time in which trout should be caught within the lake itself; and so the case was left open for further proof. Manifestly the decision did not cover the case at bar, but the complainant relies upon the language of the court. As this language constitutes a chief support of the complainant's case, we quote it at some length:

"At common law the right of fishery in navigable waters was public and common to all, and in waters not navigable it was limited to the riparian owner of the soil, and belonged exclusively to him. * * * Hence, while the riparian owner has the exclusive right of fishery upon his own land, he must so exercise that right as not to injure others in the employment of a similar right upon their lands upon the stream above and below. * * * But, while the Legislature has power to regulate and limit the time and manner of taking fish in waters which are public breeding-places or passageways for fish, it has not assumed to interfere with the privileges of the owners of private ponds having no communication through which fish are accustomed to pass to other waters. Such ponds, whether natural or artificial, are regarded as private property, and the owners may take fish therefrom whenever they choose, without restraint from any legislative enactment, since the exercise of this right in no way interferes with the rights of others. The Legislature protects the owners of such ponds in the enjoyment of their privileges, and they are expressly excepted from the statutory restrictions by the third section of the act upon which the indictment in this case is founded. The defendant is in possession, claiming the ownership of North Pond. There is no suggestion that the public have any rights in its waters other than as a breeding place for the supply of fish to other streams, or a channel for their passage. If, as the defendant claims, the trout are within his control, and there is no communication through which they can pass from the pond to other waters, the indictment cannot be maintained. If, as is claimed in behalf of the state, there is free communication through which trout pass from the pond to the streams leading into it and to the Ammonoosuc river, the indictment can be maintained upon proof of those facts."

In Chase v. Baker, 59 N. H. 347 (1879), the defendant was sued for a violation of Gen. Laws 1878, c. 179, § 1, since repealed, which provided that any person taking fish in any pond wholly in the control of a riparian owner and used for breeding should be liable to a fine, to be recovered, as it seems, at the suit of the riparian owner. The court gave judgment for the defendant, observing that:

"The plaintiff was not owner or lessee of all the land under or around and adjoining the pond, and cannot maintain this action."

We are unable to find either in the decision or in the opinion in Chase v. Baker anything to support the complainant's contention. The statute gave to the owner of all the land about a breeding pond the exclusive right of fishery therein. This is not to deny the general right of the public to fish in great ponds. In those states wherein the

Massachusetts ordinances are admitted to express the law, the right of the Legislature to grant exclusive fishery in a great pond has been recognized. Commonwealth v. Vincent, 108 Mass. 441.

In State v. Roberts, 59 N. H. 484 (1879), the defendant had been convicted of the offense charged in the case above referred to. The evidence was before the court concerning the passage of trout from Christine Lake to the Ammonoosuc river. The defendant's exceptions were overruled, and his conviction upheld. The court said in its opinion:

"Subject to the right of the state to regulate the destruction or preservation of fish, their free passage, and the use of the water as a highway, the owner of the land upon unnavigable streams and inland bodies of water has therein the exclusive right of fishery. 3 Kent Com. 510, *418; Vinton v. Welsh, 9 Pick. (Mass.) 87. The right of the Legislature to enact penal laws to prevent the undue destruction of fish does not depend upon the fact that any particular body of water does not furnish a supply of fish, but upon the fact that like other wild animals they are free, and the owner of the soil under the water containing them has not on that account any property in them. The fact that the defendant owned the land around North Pond gave him no exclusive property in the four trout before they were caught, unless their natural freedom had been destroyed by falling under the absolute control of the riparian owner. If the trout were not the prolific source of other trout for connecting streams, their freedom of passage to and from and through the pond prevented the defendant, a riparian owner, from acquiring property in them against the right of the state to preserve them for the enjoyment of future anglers. The fact that the fish were in water surrounded by the defendant's land, unless the water was so inclosed as to be absolutely within his control, and the free passage of the fish to and from it was entirely and rightfully obstructed, gave him no more property in them than he would have obtained in a wild deer that came upon his land, or a wild bird that might have alighted upon it." Page 486.

It will be noticed that the decision in this case did not involve the exclusive right of the riparian owner to fish in a great pond. The defendant was indicted for a violation of the game law, and his conviction was upheld. The complainant in this case does not rely upon the decision in State v. Roberts, but upon the language used arguendo by the Supreme Court. We may doubt if the court, in speaking of the exclusive rights of riparian owners, did not have in mind the exclusive rights which were so frequently given by the Legislature of New Hampshire, rather than those which are based upon common law.

In Concord Mfg. Co. v. Robertson, 66 N. H. 1, 25 Atl. 718, 18 L. R. A. 679 (1889), a riparian owner upon the outlet of a great pond brought suit against another riparian owner for an unreasonable diminution of the water of the pond by the defendant's cutting ice thereon. The Supreme Court held that the agreed facts did not show "that the defendant's removal of ice was an unreasonable use of the pond, or that the plaintiffs suffered damage." The case was ordered to stand for trial. In the long opinion of the court Chief Justice Doe discussed the title to the water of great ponds, and declared that it was in the public. Most of the cases above cited and many others there came under his careful consideration. The decision in Concord Mfg. Co. v. Robertson has no bearing upon the case at bar, but the language used indicates beyond a doubt an opinion favorable to the defendant before us.

In State v. Welch, 66 N. H. 178, 28 Atl. 21 (1889), the defendant was indicted for fishing in Christine Lake in 1884, contrary to General Laws 1878, c. 179, § 1, which read as follows:

"If any person shall, at any time, catch, kill or destroy in any manner any fish in any pond, reservoir, or spring prepared or used for the purpose of breeding, growing, or preserving the same, or from any brook or stream running through or supplying such pond or reservoir on land owned or leased for the purpose aforesaid, or shall break down any dam or embankment of the same, or shall in any way poison or pollute such water, or shall place therein any fish, or the roe, spawn, or fry of the same without permission of the owner or lessee of the land upon or through which such waters stand or flow, he shall for every such offense be fined not exceeding fifty dollars, or be imprisoned not exceeding six months, or both; provided, that said owners or lessees shall post in at least two conspicuous places on said land a notice with the words 'reserved for fish culture or preservation, trespass forbidden,' plainly painted, printed, or written thereon, and keep the same thus posted. This section shall be interpreted to apply only to such ponds, streams or springs as are wholly within the control of some person owning the land around the same, who has made some improvement or expended money or labor in stocking the same with fish for his own use."

This statute has been amended by St. 1885, p. 264, c. 61, which added the words: "And in no case shall it apply to natural ponds." The indictment therefore charged an act which would not have been criminal if committed within four years of the time of the court's opinion. The prosecution did not rely upon the statute as giving to the riparian owners the fishery in the pond, but claimed private ownership of the pond and its fishery at common law. The court cited the Concord Mfg. Co. Case, and set aside the conviction; whether on the ground that the indictment was defective, that the statute was unconstitutional, that it had been amended, or that it did not apply to the case, cannot be gathered from the opinion of the court. The decision, therefore, is not clearly in point, but the court said:

"One of the reserved questions was raised by the objection (presented by the defendant at the trial) that the club had no such private right as was necessary to bring the case within the statute. Whatever view is taken of the evidence tending to show, as the state claimed, that the club owned the surrounding land, it had no tendency to show that they owned the pond. The bed of the pond was reserved, set apart, and held in trust for the public use." Page 179 of 66 N. H., page 22 of 28 Atl.

In Percy Summer Club v. Welch, 66 N. H. 180, 28 Atl. 22 (1889), the New Hampshire corporation of 1883, the complainant's grantor, brought a bill in equity to restrain the defendant from fishing in Christine Lake. Upon the authority of the two cases last cited, the court held that the bill could not be maintained. In Dolbeer v. Suncook Waterworks Co., 72 N. H. 562, 58 Atl. 504 (1904), the riparian owners about a pond of 15 acres sought damages for the appropriation of the pond. The court denied the petition on the ground that the pond was public property. These two decisions support directly the defendant's contention in the case at bar.

We have thus completed our review of the New Hampshire decisions. Read together, they show that, from the beginning, the New Hampshire court has tended to hold free the fishery in all considerable lakes and ponds, basing its action partly upon the analogy of the Massachusetts ordinances, and partly upon an appreciation of local usage.

This is not the less indisputable because the reasoning of the New Hampshire court, with all respect be it said, has not always been consistent, nor has its language been clear. Moreover, a confusion between an exclusive fishery secured to the riparian owner by the game laws and an exclusive fishery at common law has led to some overstatement about the latter, until the controversy respecting Christine Lake brought a definite statement of the law in accordance with the tendency of the earlier decisions and in favor of these defendants. It may seem strange that the ownership of the water and fishery of the numerous ponds of New Hampshire remained so long without unequivocal and authoritative decision. But, in completing our search among the neighboring states, we have found that in Vermont the ownership of the fishery in a pond appears to depend on the language of the state Constitution. N. E. Trout Club v. Mather, 68 Vt. 338, 35 Atl. 323, 33 L. R. A. 569 (1895). No decision of the Supreme Court of Rhode Island on the subject has been called to our attention. In the one case found in Connecticut there had been an express conveyance of the pond by the proprietors of the colony. Turner v. Hebron, 61 Conn. 175, 22 Atl. 951, 14 L. R. A. 386 (1891). From time to time, by special acts, the Legislature of New Hampshire has made the act of fishing in sundry ponds criminal on the part of all but riparian owners. Both complainant and defendants have based argument upon these statutes. The former has contended that the Legislature thus recognized the private right of the riparian owner to the fishery, making an infringement of this right a crime where it had before been only a trespass. The defendants, on the other hand, have contended that these statutes manifest the authority of the Legislature to deal with the fishery in ponds. Not much weight can be attached to either argument. Where the fishery in great ponds is undoubtedly public, as in Massachusetts, the Legislature has in some cases granted an exclusive fishery to private individuals. We mention the matter here in order to show that the arguments referred to have not been overlooked.

Having followed the course of decision in the Supreme Court of New Hampshire from its earliest reference to the Massachusetts ordinances down to its final decision of the question here involved in favor of the defendants, we have next to consider the degree to which federal courts having the same questions before them, will follow the decisions of a state court. The matter has been considered by the Supreme Court so often that we need refer to little which is outside its reports.

The decisions of the Supreme Court which review upon writ of error the decision of a state court upholding a statute which is alleged to impair a contract are not here in point. There the Supreme Court exercises no right of general review, but must affirm the judgment of the state court unless it contravenes the Constitution of the United States. Hence the Supreme Court in those cases neither follows nor refuses to follow the course of decisions of the state court, but, having a particular judgment of that court before it, reverses the judgment or leaves it undisturbed according as it does or does not contravene the federal Constitution. Other decisions made by the state

court upon the same subject have ordinarily nothing to do with the case. N. O. Waterworks v. Sugar Co., 125 U. S. 18, 30, 8 Sup. Ct. 741, 31 L. Ed. 607; Mobile Transportation Co. v. Mobile, 187 U. S. 479, 491, 23 Sup. Ct. 170, 47 L. Ed. 266.

Where the litigation originates in a federal court, as in the case at bar, or has been removed to it from a state court, the federal court itself must render judgment. In so doing, it searches for precedents, and gives proper weight to those precedents which are found in the courts of that state wherein the federal court exercises its functions. The interpretation of state statutes and of state Constitutions is generally for the state courts, and the federal courts, in their construction of these writings, ordinarily follow the construction which has been adopted by the state courts before the controversy arose. M'Cutchen v. Marshall, 8 Pet. 220, 8 L. Ed. 923; Great Southern Hotel Co. v. Jones, 193 U. S. 532, 24 Sup. Ct. 576, 48 L. Ed. 778. This has sometimes been done, even if an overruling of earlier decisions in the state court calls for an overruling by the federal court of decisions which it has formerly made. Green v. Neal, 6 Pet. 291, 8 L. Ed. 402; Fairfield v. County of Gallatin, 100 U. S. 47, 25 L. Ed. 544. But the federal court does not yield invariably. Rowan v. Runnels, 5 How. 134, 12 L. Ed. 85; Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359.

Where the change of opinion in the state court concerns the interpretation of a state statute and results in an avoidance of contracts already entered into on the faith of the earlier decisions of the same court, the federal court, in construing the state statute, deems itself bound to follow the earlier state decisions, so far as those contracts are concerned, but, as to contracts made since the change of decision in the state court the federal court follows the later decision. Gelpcke v. Dubuque, 1 Wall. 175, 17 L. Ed. 520. We mention the rule of Gelpcke v. Dubuque only because it is relied on by the complainant. We have before us no statute of New Hampshire to construe, and the case is therefore inapplicable. It is true that St. N. H. 1887, p. 466, c. 86, declared the waters of all ponds over 20 acres to be public. But the decisions of the New Hampshire courts rendered since the passage of that statute have been rested expressly and altogether upon the common law.

Where the controversy before the federal court is concerned, as here, not with the construction of state statutes, but with the construction put by the state court upon the common law, the rule is different. Certain matters have been held by the Supreme Court to appertain to general law apart from local conditions, and as to these the decisions of the courts of the state where the federal court sits are deemed to have no peculiar authority. Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865. Where, however, the decision of the state court, though based upon the common law, is deemed of an application especially local, this decision is given an authority almost as great as would be assigned to it if it construed a state statute. As was said by Mr. Justice Bradley in Burgess v. Seligman, 107 U. S. 20, 33, 34, 2 Sup. Ct. 10, 21, 22, 27 L. Ed. 359:

"Since the ordinary administration of the law is carried on by the state courts, it necessarily happens that by the course of their decisions certain rules are established which become rules of property and action in the state, and have all the effect of law, and which it would be wrong to disturb. This is especially true with regard to the law of real estate and the construction of the state Constitutions and statutes. Such established rules are always regarded by the federal courts, no less than by the state courts themselves, as authoritative declarations of what the law is. But, where the law has not been thus settled, it is the right and duty of the federal courts to exercise their own judgment; as they also always do in reference to the doctrines of commercial law and general jurisprudence. So, when contracts and transactions have been entered into, and rights have accrued thereon under a particular state of the decisions, or when there has been no decision, of the state tribunals, the federal courts properly claim the right to adopt their own interpretation of the law applicable to the case, although a different interpretation may be adopted by the state courts after such rights have accrued. But even in such cases, for the sake of harmony and to avoid confusion, the federal courts will lean towards an agreement of views with the state courts if the question seems to them balanced with doubt."

The case before us concerns the construction to be put upon the language of a deed. The language is of common use. The construction put upon this language, as is admitted, has varied in the states of the Union. In interpreting the language of a deed of land lying in a particular state the interpretation put upon that language by the state court necessarily carries peculiar weight. "The question of the title of a riparian owner is one of local law." Whitaker v. McBride, 197 U. S. 510, 512, 25 Sup. Ct. 530, 531, 49 L. Ed. 857. To decide the case before us, we need not decide if, in construing the deeds upon which the complainant relies, we are bound to follow Concord Mfg. Co. v. Robertson, and Dolbeer v. Waterworks Co., or if we should merely "lean towards an agreement of views with the state courts if the question seems to them (the federal courts) balanced with doubt." We need not agree with all the reasoning of the learned Chief Justice in the Concord Mfg. Co. Case in order to recognize that the considered decisions of the Supreme Court of New Hampshire concerning the interpretation of New Hampshire deeds are entitled to peculiar weight. As was said by that court in Dolbeer v. Suncook Waterworks Co., 72 N. H. 562, 563, 564, 58 Atl. 504:

"At the December Term, 1889, three cases were decided in which the character of natural, freshwater ponds, as to being public or private waters, was considered: Concord Mfg. Co. v. Robertson, 66 N. H. 1, 25 Atl. 718, 18 L. R. A. 679; State v. Welch, 66 N. H. 178, 28 Atl. 21, and Percy Summer Club v. Welch, 66 N. H. 180, 28 Atl. 22. In the last two cases the question was definitely raised whether a pond containing 300 to 500 acres, situated in the midst of a tract of land belonging to a single owner, was the private property of the landowner or was public property; and it was decided that it was public property. The question was not fully discussed in these cases, but the first case was cited as authority for the decisions without additional comment, thus adopting the conclusion therein reached and the reasoning by which it was supported. If, as the plaintiff's counsel suggest, the question was not before the court in the first case, and so what was said upon it should be regarded as dictum if attention is fixed upon that case alone, yet when the three cases are considered together in connection with the fact that they were decided at the same term, by the same court speaking through the same judge (Chief Justice Doe), and with the further fact that the first case is cited as the authority for the decisions in the other two, it becomes apparent that the first case must be treated as authoritative on the question."

Even if the cases decided before State v. Roberts are not in point, yet they contain many dicta which indicate that in the absence of an express grant from the state the fishery of a great pond is not of private ownership, and the facts in Bell v. Offutt are hardly distinguishable from those in the case before us. Had it been reported, it must have affected considerably the arguments upon both sides. Therefore we find nothing which requires us to differ from the considered opinion of the Supreme Court of New Hampshire.

We agree with the Circuit Court in holding that, apart from the fishery, the interference with the complainant's rights in the borders of the pond does not warrant the interposition of a court of equity.

The decree of the Circuit Court is affirmed, and the appellees recover their costs of appeal.