**BOWLES et al. v. KINNEY, Supervisor of Game & Game Fish for the State of Washington, et al.**

(District Court, W. D. Washington, N. D. August 1, 1923.)

No. 172.

1. **Equity 149—Plaintiffs having a common right of fishery may join in a suit for its protection.**

   Several owners of land through which a stream flows, who have a common right of fishery through all the tracts, may join in a suit for its protection.

2. **Fish 5(1)—Owner of land through which flows nonnavigable stream, has exclusive right of fishery within his boundaries.**

   The owner of land through whch flows a nonnavigable fresh water stream has the exclusive right of fishery therein within his boundaries.

3. **Fish 5(3)—Owner of exclusive right of fishery may protect such right by injunction.**

   The owner of an exclusive right of fishery in a nonnavigable stream on his land may maintain a suit in equity to protect such right by enjoining fishing therein by others, who claim the right as members of the general public.

---

For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Injunction ⬳75—Injunction granted to protect private right of'fishery.**

A court of equity will enjoin officers of a state game and fishery department from tearing down warning signs or threatening watchmen maintained by the owners of a stream maintained as a private fishing preserve, and from advising the public to trespass thereon; but will not interfere with the exercise by such officers of the discretionary power given them by statute to close the stream to fishing, when considered necessary for the preservation of game fishes.

In Equity. Suit by W. R. Bowles and others against J. W. Kinney, as Supervisor of Game and Game Fish for the State of Washington, and others. On motion to dismiss bill. Denied.

The complainants allege: That they are citizens of the state of Oregon and that they are owners of land in the state of Washington through which the Washougal river flows. That the said river, flowing through each parcel of land set out, is not navigable, and is a rough mountain stream, the channel of which is filled with rocks and boulders, the waters in many places being less than one foot in depth across the channel, and that it cannot be used for commerce. That canoes or boats of any kind cannot navigate said river where it flows upon and over plaintiffs' land. That said river is a natural habitat of trout and game fish, and the waters of said stream contain large numbers of said fish. That the plaintiffs use the stream throughout its course through said lands as a common fishing preserve for each of the plaintiffs. That the lands are of nominal value for agricultural or any other purpose than fishing in said stream, but that the fishing privilege is worth in excess of $10,000, and that "the matter in controversy exceeds, exclusive of costs, the sum and value of $3,000." It is alleged: That the defendants Huffard, chairman of the game commission of Skamania county, and Alex Mc-Nagan and John Wachter are citizens of Skamania county, and with Huffard constitute the Skamania county game commission. That Gilmore is a citizen of the state of Washington and game warden of Skamania county. That the defendants Pio are each a citizen of the state of Washington and resident of Clark county. That numerous persons have frequently come into and upon the premises of the plaintiffs without right or authority, over the protest of the plaintiffs, and have taken fish from the said Washougal river on the premises of the plaintiffs in defiance of the rights and wishes of the plaintiffs. That because of the area and character of the land of the plaintiffs it is impossible to patrol all of the said premises for the purpose of catching and identifying parties entering upon the same, and preserve the evidence of each of such trespasses. "The damage done by each separate trespass of each person who goes to and upon said premises and takes fish from said Washougal river is small, and the expense of attempting to recover the amount thereof is so great that such measure would afford no relief to plaintiffs; also to attempt to prosecute actions at law against such persons who trespass upon said lands and fishes in said water of the said Washougal river would require a multiplicity of suits."

April, 1922, plaintiffs, to prevent trespasses on said lands and taking fish from said river upon lands of the plaintiffs, appealed to the defendants game commission of Skamania county to assist in preserving said fish in said Washougal river, and protect the plaintiffs' rights in said stream on said lands, but that members of said game commission, "conspiring with the said defendant J. W. Kinney, as state supervisor of game and game fish of the state of Washington, and with numerous persons desiring to trespass upon plaintiffs' said land and take fish from the said Washougal river upon said land, encouraged and urged said persons, whose names to the plaintiffs are unknown, to take fish from the said waters of the said Washougal river, and as a result of said concerted action of said supervisor of game and game fish, and said members of the Skamania county game commission, many persons did take fish from the waters of said river, and did overawe, threaten

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

bodily injury to, and intimidate the watchmen whom plaintiffs maintained to warn persons from said premises, and did frighten said watchmen from the premises. That in pursuance of such conspiracy the defendants Skamania game commission caused to be published in a newspaper of general circulation at Washougal, Wash., the following notice:

"To Whom It may Concern: Certain parties owning land along the Washougal river in Skamania county have men in their employ to patrol the river, and keep people from fishing along their holding for several miles, and are exceeding their authority in regard to said stream. Through Mr. J. W. Kinney, State Supervisor of Game and Game Fish, I am instructed to notify all sportsmen their interests will be protected in regard to fishing on the Washougal river or any other stream that is navigable. ＊ ＊ ＊ "

That plaintiffs addressed a letter to the department of game and fisheries of the state of Washington with relation to the rights of said plaintiffs, and in response thereto J. W. Kinney, state superviser of game and game fish, pretending to act in accordance with the law of Washington of 1915 (section 5925, Rem. Comp. Stat.), threatened to close the Washougal river where the same flows through and over the lands of the plaintiffs, if the plaintiffs would not give to the public the right of fishing thereon, and threatened to deny the plaintiffs the enjoyment of said lands. That the defendant Gilmore, pretending to act as game warden for Skamania county, wrongfully and willfully tore down and destroyed the printed notices which plaintiffs had posted on the said premises, warning the public not to trespass thereon, and threatened to tear down all notices plaintiffs might post in the future, and threatened to arrest said watchmen, and threatened to put them in jail if they warned any persons not to fish on plaintiffs' premises, and that persons "assert that they were advised to so fish by the said defendant Gilmore," and refused to leave the premises of the plaintiffs upon plaintiffs' request. That the action of the said defendants so conspiring will, unless restrained by the court, deprive the plaintiffs of their private right and exclusive right of fishing, and deprive plaintiffs of their property without due process of law, in violation of the Constitution of the United States. That neither of the defendants has any interest in the said premises, nor in the said Washougal river where the same flows across and over the premises of the plaintiffs, or the fish living in the said water of said premises. That since the publication of the said notices persons are asserting rights and privileges of fishing and hunting on plaintiffs' premises without the consent of the plaintiffs.

The defendants move to dismiss, on the ground that the bill of complaint does not state matters of equitable relief and that several causes of action are improperly joined.

A. L. Miller, of Vancouver, Wash., and McCamant & Thompson, of Portland, Or., for plaintiffs.

John H. Dunbar and E. W. Anderson, both of Olympia, Wash., for defendants.

NETERER, District Judge (after stating the facts as above). [1] For the purposes of this decision, all of the facts well pleaded are admitted. From this admission it appears that the plaintiffs, though interested severally in the several tracts set out, have a common right to use the stream throughout its course over the several tracts of land described as a "common fishing preserve." It thus appears that the several plaintiffs have rights which depend upon the same questions of fact and law, and have a community of interest growing out of the nature and condition of the right in dispute. Cutting v. Gilbert, 6 Fed. Cas. 1079, No. 3,519, 5 Blatchf. 259. It likewise appears that there is a confederation of the defendants with relation to the fishing

rights in the stream running through, over, and upon the lands of the plaintiffs, and it is likewise admitted that this stream is a nonnavigable stream.

[2] It has been uniformly held by the Supreme Court of the state of Washington that a raparian proprietor upon the banks of a nonnavigable fresh-water stream owns the exclusive right of fishery in the water flowing through, over, and upon his land. Griffith v. Holman, 23 Wash. 347, 63 Pac. 239, 54 L. R. A. 178, 83 Am. St. Rep. 821. The holding of the Washington court is a declaration of the law as generally applied. Phila. Co. v. Stimson, 223 U. S. 605, 32 Sup. Ct. 340, 56 L. Ed. 570; Hartman v. Tresise, 36 Colo. 146, 84 Pac. 685, 4 L. R. A. (N. S.) 872; Rockefeller v. Lamora, 186 N. Y. 567, 79 N. E. 1115; People v. T. Lumber Co., 116 Cal. 397, 48 Pac. 374, 39 L. R. A. 581, 58 Am. St. Rep. 183; State v. Mallory, 73 Ark. 238, 83 S. W. 995, 67 L. R. A. 773, 3 Ann. Cas. 852. Circuit Judge Putnam, in Percy S. Club v. Astle (C. C.) 145 Fed. 53, enters upon an elaborate discussion of these rights, and he states that there is no question but that individuals may acquire title to the bed of nonnavigable rivers and to the beds of ponds and lakes, and that when acquired the rights of fishery follows, and this is merely the declaration of the law as generally understood and applied.

[3] The Circuit Court of Appeals of the First Circuit, in Percy S. Club, supra, 163 Fed. 1, 90 C. C. A. 527, affirmed this decision, and held that a party having the exclusive right of fishing may maintain a suit in equity to protect such rights by enjoining others from fishing therein, who claim the right as members of the general public, and committing trespass on the complainants' shore property, which is only incidental to such fishing. The court, however, holds that, apart from the fishery, the interference with the complainants by trespassing upon the land bordering on the water does not warrant the interposition of a court of equity.

[4] Section 5925, Rem. Comp. Stat., provides in substance that, whenever the chief game warden, or county game wardens of their respective counties, shall consider it necessary to protect the game fishes, any stream may be closed to such fishing to such time and manner as may be declared, and then provides how it may be done. The Supreme Court of Washington, in Cawsey v. Brickey, 82 Wash. 653, 144 Pac. 938, and Vail v. Seaborg, 120 Wash. 126, 207 Pac. 15, and other cases, has held that this section is not a delegation of legislative power; that the function of these officers has a dual relation. It is a discretionary power. It partakes of the legislative, until the discretionary is exercised, when it becomes executive, and, so long as the discretion is open, equity may not interfere. Lane v. Anderson (C. C.) 67 Fed. 563. And this, I think, is the uniform holding of the courts, McChord v. L. R. Co., 183 U. S. 483, 22 Sup. Ct. 165, 46 L. Ed. 289; Louisiana v. McAdoo, 234 U. S. 627, 34 Sup. Ct. 938, 58 L. Ed. 1506: Dalton Co. v. Corporation Commission of Virginia, 236 U. S. 699, 35 Sup. Ct. 480, 59 L. Ed. 797.

Upon the bill of complaint, under the motion to dismiss, I think the restraining order should issue enjoining the defendants from tearing

down trespass signs, and from threatening and intimidating the watchmen, and from advising parties to enter upon the land and fishing in the stream. I do not think that the court should at this time enjoin the defendants from promulgation of the order by the game commission or supervisor of game and fish, for the reason that, until the discretion lodged is exercised, the court should not interfere, and, if the defendants should proceed and unlawfully interfere with the rights of the plaintiffs, as given by the law and guaranteed by the Constitution, the court is open to the complainants for such remedies as may be available.

The motion to dismiss is denied, and an order may be presented in accordance herewith.